# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## SOUTHERN DIVISION (CHATTANOOGA)

| | | |
|---|---|---|
| CALLIE LOWE and HENRY ALLEN LOWE, ADMINISTRATORS FOR THE ESTATE OF ALLEN C. LOWE | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action |
| v. | ) ) | File No. |
| CSX TRANSPORTATION, INC. | ) ) | **Plaintiffs Demand a Jury Trial** |
| Defendant. | ) ) | |

## COMPLAINT

Plaintiffs, as Administrators for the Estate of Allen Lowe, by and through counsel, files this Complaint for Damages individually and as successors in interest against Defendant, CSX Transportation, Inc. (hereinafter "CSXT"), a corporation, respectfully showing the following:

## <u>JURISDICTION AND VENUE</u>

1.      Plaintiffs are citizens and residents of Tennessee. Plaintiffs are residents of Washington County, Tennessee. The Estate of Allen C. Lowe was filed and is

being administered in Unicoi County, Tennessee. Allen C. Lowe (hereinafter "Decedent") was an employee of CSXT.

2.      Defendant CSXT is a railroad corporation incorporated in the State of Virginia with its principal place of business in the State of Florida. Defendant CSXT is engaged in interstate commerce in the Southern Division (Chattanooga) of the Eastern District of Tennessee and has offices, agents, and carries on significant operations in the Southern Division (Chattanooga) of the Eastern District of Tennessee.

3.      Defendant CSXT maintains and operates rail lines, tracks, locomotives and rail cars in the Southern Division (Chattanooga) of the Eastern District of Tennessee. CSXT does business and was at all times mentioned herein doing business within the jurisdiction of this Court as a common carrier of intrastate and interstate commerce.

4.      Pursuant to 45 U.S.C. § 56, Defendant CSXT resides in the Southern Division (Chattanooga) of the Eastern District of Tennessee.

5.      Defendant CSXT maintains a registered agent in the Eastern District of Tennessee and is subject to the jurisdiction of this Court.

6.      Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)(2) and 45 U.S.C. § 56 because a substantial part of the events or omissions giving rise to the claim(s) occurred in this district and division.

7. Venue is also proper in this Court pursuant to 28 U.S.C. §§1391(b)(1), (c)(2), (d) and 45 U.S.C. § 56 because CSXT resides and/or does business in this district and division.

8. Plaintiffs' action(s) arise under the Federal Employers Liability Act ("FELA"), 45 U.S.C. §§51-60, Federal Safety Appliance Act ("SAA"), 49 U.S.C. § 20301, et seq., the Federal Locomotive Inspection Act ("FLIA"), 49 U.S.C. § 20701, et seq., 49 U.S.C. § 218.99, <u>Tenn. Comp. R. & Regs. 1680-09-02-.04, Tenn. Comp. R. & Regs. 1680-09-02-.05</u>, and the statutes and regulations promulgated and enforced by the Secretary of Transportation and the Federal Railroad Administration, as well as common law property tort claims for destruction of property (conversion) and damage to property (trespass to chattels). Plaintiffs avail themselves of all rights, benefits and immunities afforded them under the aforementioned statutes and regulations, including the right to maintain this action in this Court.

## FACTS

9. At all times herein mentioned, Defendant CSXT was an intrastate and interstate common carrier by railroad engaged in interstate transportation and commerce.

10. At the time of his injury and death on April 13, 2019, Decedent, as employee, and Defendant CSXT, as employer, were mutually engaged in acts and

services in the furtherance of interstate commerce and was engaged in work, which directly, closely and substantially affected the general interstate commerce carried on by Defendant CSXT.

11.     This civil action was filed within the applicable three-year statute of limitations period governing lawsuits brought pursuant to the FELA.

12.     Decedent, Allen C. Lowe, was 42 years and 103 days old at the time of his death. He was born in Titusville, Florida and raised in upper east Tennessee by his parents, Carol Chandler Lowe and Henry Allen Lowe. He went to high school at David Crockett High School in Jonesborough, Tennessee. Allen Lowe graduated high school in 1990. After high school he married Lou Ann Clouse and they had two children, Callie Lowe and Henry "Hank" Allen Lowe.

13.     Decedent began his railroad career with CSXT in October of 1994 as a carman in Erwin, Unicoi County, Tennessee. After Defendant closed the Erwin facilities in 2015, Decedent relocated. Based on his seniority with CSXT, he began regularly commuting 250 miles from Erwin to Chattanooga and vice versa. He maintained this commute to provide for his family until the date of his death.

14.     Decedent planned dinner with friends on April 14, 2019, the day after his death.

15.     Decedent planned to attend the academic honors banquet at David Crocket High School the Monday subsequent to his death as his son, Hank, was receiving

an award. He had also made arrangements for a celebration of his son's upcoming high school graduation.

16.    Decedent did, and was continuing to, pay for daughter Callie's support, including but not limited to, education, meals, utility bills, automobile, mortgages/rent, loans, property taxes, and other bills.

17.    Decedent did, and was continuing to, pay for son Hank's support, including but not limited to, education, meals, utility bills, automobile, mortgages/rent, loans, property taxes, and other bills.

18.    Approximately two-months prior to the accident serving as the basis of this action, CSXT made significant changes to the remote-control switching operations in CSXT's Wauhatchie Yard located at 500 Wauhatchie Pike in Chattanooga, Tennessee. The size of the remote-control switching crew was reduced from two persons to one person. The zone of protection or "Remote-Control Zone" was also drastically altered.

19.    CSXT implemented these significant operational changes and failed to provide any training to the transportation workers and/or carmen working in Wauhatchie Yard prior to, or after, these operational changes were made.

20.    On April 13, 2019, Decedent was assigned to work in CSXT's Wauhatchie Yard as a carman along with CSXT co-worker Terry Wilson. Decedent and Wilson

5

were responsible for inspecting, testing, and repairing "cuts"[1] of railcars prior to the cars departing Wauhatchie Yard as trains.

21.     On April 13, 2019, Decedent arrived at work on duty at or before 3:00 P.M.

22.     On April 13, 2019, Decedent received a job briefing with his co-workers for approximately fifty-five minutes to one hour in length. The co-workers in attendance and/or aware of the job briefing were Carmen Terry Wilson, Gary Lake and Allen Young, Shop Foreman Rodney Munden, Conductor/RCO Operator Keith Robertson, Yardmaster Adam Carson, and Trainmaster Quay McGowan.

23.     On April 13, 2019, Decedent worked and conversed with co-workers for two hours prior to the accident that caused his injuries and death. The co-workers who worked with Decedent that day were Carmen Terry Wilson, Gary Lake, and Allen Young, Conductor/RCO Operator Keith Robertson, Yardmaster Adam Carson, and Trainmaster Quay McGowan.

24.     On April 13, 2019, while performing his job duties as a carman working in CSXT's Wauhatchie Yard, Decedent was killed as a direct result of the negligence of the Defendant CSXT, its agents, and/or employees as he attempted to navigate the rail yard during the performance of his assigned duties as a carman. Decedent was killed when he was struck by CSXT locomotive 2042, which was part of a remotely controlled train. Upon information and belief, the operator of the remote-

[1] "Cuts" of railcars are multiple railcars which are coupled together in a single track which will be added to a train for movement to another location.

6

controlled train failed to keep a proper lookout and failed to apply the remotely controlled braking functions of the locomotive.

25. The CSXT remote-control operator of CSXT locomotive 2042 was simultaneously riding the side of the last rail car and operating the remote-control unit (box hanging from a harness).

26. Decedent, prior to being struck by CSXT locomotive 2042, was walking in his work area and was easily visible and clearly in view without obstruction to the CSXT remote-control operator riding the side of the rail car as both were on the same side of the track.

27. CSXT's remote-control operator was operating CSXT locomotive 2042 while traveling at an excessive speed.

28. Given the operational changes at the location of the incident, change in blue flag protocols, lack of training, and rushed environment, CSXT's remote-control operator was operating CSXT locomotive 2042 and its cut of cars in a grossly excessive speed.

29. Given that the conditions were known, or should have been known, in the immediate area of the location of the incident, CSXT's remote-control operator was operating CSXT locomotive 2042 and its cut of cars in an improper and negligent manner.

7

30.    At all times material hereto, CSXT locomotive 2042 and the cut of cars attached thereto were under the exclusive control and possession of Defendant and Defendant's Agent/Employee.

31.    Upon being struck by CSXT locomotive 2042, which was coupled to a second engine and three railcars, Decedent was pushed forward and knocked down on to the railroad tracks before being run over by the train and dragged approximately twenty feet. Decedent's body was crushed against the rail and other track components as the entire train ran over the Decedent causing horrific trauma to his entire body, and ultimately causing the Decedent's death.

32.    As a direct result of being struck by CSXT locomotive 2042 and its cut of cars, Decedent suffered severe and extreme conscious psychological and physical trauma before eventually dying.

33.    Immediately following the incident, agents and/or representatives of CSXT entered and searched the Decedent's work lockers. During their search, CSXT agents and/or representatives discarded many of the Decedent's personal belongings, denying his two children, the administrators of his Estate, the opportunity to collect all of the personal effects of their father, and potentially, and most probably, destroying valuable evidence in the process.

34.    On April 14, 2019, the very next day after Decedent's death, agents and/or representatives of CSXT, without legal authority, broke into, entered and searched

8

the car driven by Decedent, which belonged to Decedent's mother. Decedent's mother never provided CSXT and/or its agents with authority and/or permission to break into, enter, and/or search her vehicle. Moreover, CSXT and/or its agents intentionally damaged the car drive by Decedent. CSXT and/or its agents were without any permissible grounds for this criminal act and damage to property.

35. When Decedent's family requested his personal effects, the car keys of Decedent's mother's car, which had been driven by the Decedent on the day of his death, were not immediately returned to Decedent's family. The car was impermissibly searched multiple times and criminally damaged after Decedent's death. Multiple requests were required before Defendant CSXT finally sent Decedent's family the car keys and car.

36.    Prior to Decedent's memorial services, a CSXT claim agent contacted counsel and asked if Defendant's managers could attend the visitation service. The Decedent's family requested that ***only*** managers who ***personally*** knew and worked with the Decedent attend the visitation. This message was clearly conveyed to Defendant via Plaintiff's counsel, yet Defendant's operational management chose to ignore the clear wishes of the family. CSXT sent numerous managers and representatives who did not know or interact with the Decedent to the memorial service. Defendant did so not in an effort of respect to the family, but to engage the several CSXT co-workers of the Decedent that attended the overflow funeral home

services. This act and practice of intimidation caused extreme stress and anguish for family members, not to mention to the surviving CSXT co-workers and friends of Decedent.

37. Without attempting to hide their actions, the CSXT managers and representatives openly pulled CSXT employees who worked with and/or knew Decedent from the memorial visitation services, and spoke with several employees individually about the subject incident. These intimidating encounters took place in a corner of the funeral home and/or just outside the funeral home in clear site of all service attendees and Decedent's family members.

38. Immediately after the death of the Decedent, Defendant and its agents and/or representatives made numerous salacious, slanderous, and defamatory comments regarding the Decedent's work habits, personal habits, character, alleging that the Decedent was the sole cause of the accident that claimed the Decedent's life. These comments were made as the official investigation of this accident by the National Transportation Safety Board and Federal Railroad Administration had only just started.

39. As a direct result of said occurrence of April 13, 2019, Decedent's Estate has been caused to lose income and fringe benefits, which Decedent otherwise would have earned, and a loss of support, services Decedent would have provided, and other pecuniary benefits.

10

## COUNT 1 – Negligence Claims (FELA)

40.     Plaintiffs adopt all factual allegations stated above as if they were fully stated herein.

41.     At all times relevant to this civil action, Defendant CSXT owed a non-delegable duty to provide Decedent with a reasonably safe place to work.

42.     As a result of the incident of April 13, 2019 as described, Decedent was caused to suffer multiple conscious traumatic psychological and physical injuries, which ultimately caused his death.

43.     Decedent's injuries and death were caused by the negligence of Defendant, and/or its agents, servants or employees acting in the course and scope of their employment with Defendant. The negligence of Defendant is in violation of its duty to provide Decedent with a reasonably safe place to work under 45 U.S.C. § 51.

44.     The acts of negligence of Defendant, which caused in whole, or in part, injury to Decedent, include, but are not limited to, the following:

        a.     ineffective remote-control zone practices and protections for workers at Wauhatchie Yard;

        b.     hazardous, dangerous, and excessive debris, scrap, uneven and/or fouled ballast and potholes causing hazardous working and walking conditions indicative of overall deplorable yard conditions;

c.    management and/or co-employee's failures and deficiencies in maintaining and inspecting the rail yard (Wauhatchie Yard);

d.    management and/or co-employee's failures and deficiencies in train handling and operational compliance with operating rules regarding switching operations, including but not limited to, shove protection, remote control zones, and blue flag protection;

e.    management and/or co-employee's failures and deficiencies in train handling and operational compliance with radio usage and communication, including but not limited to, confirming that the remote-control zone was clear before resuming operations;

f.    management and/or co-employee's failures and deficiencies in train handling and operational compliance regarding switching, speed and train handling, and failure to respond to the obvious and apparent need to stop the train movement of when the track was fouled by the Decedent; and

g.    Defendant was otherwise negligent.

45.    All of Decedent's injuries and damages were caused, in whole or in part, by Defendant's failure to provide Decedent with a reasonably safe place to work.

46.    Defendant CSXT knew or should have known of the unsafe conditions, inadequate practices, inadequate training and improper operations as indicated in

Count 1 which caused, or contributed to cause, either in whole or in part, Decedent's injuries and damages.

47. It is reasonably foreseeable that the negligence and/or statutory violations of Defendant CSXT as outlined in Count 1 would cause Decedent's injuries and damages.

## COUNT 2 – FELA – Violation of State Safety Regulation Claims

## (Tennessee Comprehensive Rules & Regulations 1680-09-02-.04 and

## Tennessee Comprehensive Rules & Regulations 1680-09-02-.05)

48. Plaintiffs adopt all factual allegations stated above as if they were fully stated herein.

49. Defendant CSXT's failure to properly inspect/maintain the Wauhatchie rail yard and walkways prior to and/or at the time of Decedent's injury, was a violation of the Tenn. Comp. R. & Regs.1680-09-02-.04 and Tenn. Comp. R. & Regs. 1680-09-02-.05.

50. That this count is brought under and by virtue of the provisions of the Federal Employers' Liability Act, namely, 45 U.S.C. § 54(a), thereby incorporating the Tenn. Comp. R. & Regs. 1680-09-02-.04 and Tenn. Comp. R. & Regs. 1680-09-02-.05.

51. That, at all times herein mentioned, Defendant CSXT, as Decedent's employer, was under a statutory obligation to comply with the

13

Tenn. Comp. R. & Regs. 1680-09-02-.04 and Tenn. Comp. R. & Regs. 1680-09-02-.05, a safety regulation, in connection with the walkways adjacent to and in-between the railroad tracks in Defendant's Wauhatchie rail yard in Chattanooga, Tennessee.

52. That, at all times herein mentioned, Defendant CSXT violated Tenn. Comp. R. & Regs. 1680-09-02-.04 and Tenn. Comp. R. & Regs. 1680-09-02-.05 in that, among other things, Defendant failed to provide its employees with safe and regular walkways that was not rough, loose, unstable, uneven, and cluttered with excessive debris in Defendant's Wauhatchie rail yard in Chattanooga, Tennessee.

53. That the conduct regulated by Tenn. Comp. R. & Regs. 1680-09-02-.04 and Tenn. Comp. R. & Regs. 1680-09-02-.05 is intended to promote the safety of railroad workers. Tenn. Comp. R. & Regs. 1680-09-02-.04 and Tenn. Comp. R. & Regs. 1680-09-02-.05 was drafted for, and intended to protect railroad workers such as Decedent Allen Lowe.

54. That the Defendant's decision to allow Decedent to work on a walkway in violation of the Tenn. Comp. R. & Regs. 1680-09-02-.04 and Tenn. Comp. R. & Regs. 1680-09-02-.05 played a part in causing Decedent Allen Lowe's injuries and death.

55.     That the premises and the culpability of Defendant CSXT herein has played a part in causing Decedent to suffer and sustain the aforementioned injuries and damages.

56.     Defendant CSXT's failure to comply with the provisions of Tenn. Comp. R. & Regs. 1680-09-02-.04 and Tenn. Comp. R. & Regs. 1680-09-02-.05 amounts to negligence *per se*.

57.     Defendant CSXT's negligence and violation of the Tenn. Comp. R. & Regs. 1680-09-02-.04 and Tenn. Comp. R. & Regs. 1680-09-02-.05 created an unsafe workplace that caused decedent's injuries and death.

58.     It was foreseeable that Defendant CSXT's negligence and violation of the Tenn. Comp. R. & Regs. 1680-09-02-.04 and Tenn. Comp. R. & Regs. 1680-09-02-.05 could cause injuries and damages.

59.     Defendant CSXT's violation of the Tenn. Comp. R. & Regs. 1680-09-02-.04 and Tenn. Comp. R. & Regs. 1680-09-02-.05 was a legal cause of Decedent's injuries, death, and damages.

60.     As a result of Defendant CSXT's violation of the Tenn. Comp. R. & Regs. 1680-09-02-.04 and Tenn. Comp. R. & Regs. 1680-09-02-.05, Defendant is strictly liable to Decedent for all his injuries, death and damages.

15

61.    As a result of Defendant CSXT's acts and/or omissions, including the violations of the Tenn. Comp. R. & Regs. 1680-09-02-.04 and Tenn. Comp. R. & Regs. 1680-09-02-.05, Decedent has suffered injuries, death and damages.

62.    All of Decedent's injuries and damages were caused, in whole or in part, by Defendant's failure to provide Decedent with a reasonably safe place to work.

63.    Defendant CSXT knew or should have known of the unsafe conditions, inadequate practices, deficient training and improper operations as indicated in Count II which caused, or contributed to cause, either in whole or in part, Decedent's injuries and damages.

64.    It is reasonably foreseeable that the negligence and/or statutory violations of Defendant CSXT as outlined in Count 2 would cause Decedent's injuries and damages.

## COUNT 3—Violation of the Safety Appliance Act
### (49 U.S.C. § 20301, et seq.)

65.    Plaintiffs adopt all factual allegations stated above as if they were fully stated herein.

66.    At all times relevant to this civil action, Defendant CSXT owed a non-delegable duty to provide Decedent with a reasonably safe place to work.

67.    On April 13, 2019, Defendant failed to properly inspect and maintain the parts and appurtenances of the railcars in the train consist on April 13, 2019.

16

68.     Defendant's failure to properly inspect and maintain the parts and appurtenances of the railcars in the train consist, which were in use and under the exclusive control of the Defendant at the time of Decedent's injury, was a violation of the Federal Safety Appliance Act, 49 U.S.C. § 20301, et seq. ("SAA").

69.     Defendant CSXT's failure to comply with the provisions of 49 U.S.C. §§ 20301, et seq. amounts to negligence *per se.*

70.     Defendant CSXT's negligence and violation of the SAA created an unsafe workplace that caused Decedent's injuries, eventual death, and damages.

71.     It was foreseeable that Defendant CSXT's negligence and violation of the SAA could cause injuries and damages.

72.     Defendant CSXT's violation of the SAA was a legal cause of Decedent's injuries, death, and damages.

73.     As a result of Defendant CSXT's violation of the SAA, Defendant is strictly liable to Decedent and Plaintiffs for all aforementioned injuries and damages.

74.     As a result of Defendant CSXTs acts and/or omissions, including violations of the SAA, Decedent suffered injuries and damages.

75.     All of Decedent's injuries and damages were caused, in whole or in part, by Defendant's failure to provide Decedent with a reasonably safe place to work.

76.     Defendant CSXT knew or should have known of the unsafe conditions, inadequate practices, deficient training and improper operations as indicated in

Count 3 which caused, or contributed to cause, either in whole or in part, Decedent's injuries and damages.

77.    It is reasonably foreseeable that the negligence and/or statutory violations of Defendant CSXT as outlined in Count 3 would cause Decedent's injuries and damages.

**COUNT 4—Violation of the Federal Locomotive Inspection Act
(49 U.S.C. § 20701, et seq.)**

78.    Plaintiffs adopt all factual allegations stated above as if they were fully stated herein.

79.    At all times relevant to this civil action, Defendant CSXT owed a non-delegable duty to provide Decedent with a reasonably safe place to work.

80.    Defendant knew or should have known of the unsafe condition(s) that existed on CSXT locomotive 2042, which caused or contributed to cause, either in whole or in part, Decedent's injuries, eventual death, and damages.

81.    Because of the unsafe condition(s), Decedent suffered severe injuries and eventually perished.

82.    As a direct result of the negligence of Defendant and/or its agents and employees, Decedent suffered critical injuries that became fatal.

83.    As a direct result of said occurrence, Plaintiffs have been caused to lose income, which they would otherwise have earned and, with reasonable certainty, will be caused to lose earnings in the future.

18

84.     Defendant was negligent in failing to use reasonable care to provide Decedent with a reasonably safe place to work.

85.     Defendant failed to comply with the provisions and requirements of FELA, 45 U.S.C. §§ 51-60. Defendant also failed to comply with its own rules and regulations.

86.     Defendant's violation of the FELA was a legal cause of Decedent's injuries, and Plaintiffs' damages.

87.     Defendant's failure to properly inspect/maintain the parts and appurtenances of CSXT locomotive 2042, which was in use at the time of Decedent's fatal injuries, was a violation of the Federal Locomotive Inspection Act, 49 U.S.C. § 20701, et seq. ("FLIA").

88.     Defendant's negligence and violation of the FLIA created an unsafe workplace that caused Decedent's injuries and eventual death.

89.     It was foreseeable that Defendant's negligence and violation of the FLIA could cause injuries and damages.

90.     Defendant's violation of the FLIA was a legal cause of Decedent's injuries, eventual death, and Plaintiffs' damages.

91.     As a result of Defendant CSXT's violation of the FLIA, Defendant is strictly liable to Decedent and Plaintiffs for all aforementioned injuries and damages.

## COUNT 5—Failure to Provide Proper Protection for Shoving or Pushing Movements
## (49 U.S.C. § 218.99)

92.     Plaintiffs adopt all factual allegations stated above as if they were fully stated herein.

93.     At all times relevant to this civil action, Defendant CSXT owed a non-delegable duty to provide Decedent with a reasonably safe place to work.

94.     Defendant knew or should have known of the unsafe condition(s) that existed CSXT's Wauhatchie Yard on April 13, 2019, which caused or contributed to cause, either in whole or in part, Decedent's injuries, eventual death, and damages.

95.     Because of the unsafe condition(s), Decedent suffered severe injuries and eventually perished.

96.     As a direct result of the negligence of Defendant and/or its agents and employees, Decedent suffered critical injuries that became fatal.

97.     As a direct result of said occurrence, Plaintiffs have been caused to lose income, which they would otherwise have earned and, with reasonable certainty, will be caused to lose earnings in the future.

98.     Defendant was negligent in failing to use reasonable care to provide Decedent with a reasonably safe place to work.

99. Defendant failed to comply with the provisions and requirements of FELA, 45 U.S.C. §§ 51-60. Defendant also failed to comply with its own rules and regulations.

100. Defendant's violation of the FELA was a legal cause of Decedent's injuries, and Plaintiffs' damages.

101. Defendant's failure to provide proper protection for shoving or pushing movements during yard switching operations, was a violation of 49 U.S.C. § 218.99, et seq.

102. Defendant's negligence and violation of 49 U.S.C. § 218.99, et seq. created an unsafe workplace that caused Decedent's injuries and eventual death.

103. It was foreseeable that Defendant's negligence and violation of 49 U.S.C. § 218.99, et seq. could cause injuries and damages.

104. Defendant's violation of 49 U.S.C. § 218.99, et seq. was a legal cause of Decedent's injuries, eventual death, and Plaintiffs' damages.

### COUNT 6 – Destruction of Property (Conversion)

105. Plaintiffs adopt all factual allegations stated above as if they were fully stated herein.

106. This claim is brought forth within the required statute of limitations as set forth in T.C.A. § 28-3-105.

107. Immediately following the incident, agents and/or representatives of CSXT entered and searched the Decedent's work lockers. During the course of this search, Defendant and/or its agents, exceeded the scope of their authority and unlawfully disposed and destroyed Decedent's personal effects and property. The disposal and destruction of the Decedent's personal effects and property was intentional and denied the Plaintiffs' of their lawful rights to, and enjoyment of, the personal effects of the Decedent, their father.

108. Plaintiffs did not consent in any manner to Defendant's disposal and destruction of the personal effects and property of Decedent.

109. Defendant failed to inventory the contents of Decedent's lockers and have failed to return or replace any of the personal effects or property of the Decedent that were illegally destroyed.

110. As Administrators of the Estate of Allen Lowe, Plaintiffs are the rightful owners of all personal effects and property of the Decedent.

111. The Defendant's conversion of the Decedent's personal effects and property by disposal was a wrongful act inconsistent with the property rights of the Plaintiffs.

112. Defendant is liable for harm and damages caused to Plaintiffs by its actions and/or those of its agents.

113.   Plaintiffs have damages in an amount to be proven at trial as a result of Defendant's actions in disposing of and destroying the personal effects and property of Decedent.

## COUNT 7 – Unauthorized Entry and Damage to Property (Trespass to Chattels)

114.   Plaintiffs adopt all factual allegations stated above as if they were fully stated herein.

115.   This claim is brought forth within the required statute of limitations as set forth in T.C.A. § 28-3-105.

116.   On the day after Decedent's death, agents and/or representatives of CSXT, without legal authority, broke into and altered the car's electrical systems, then entered and searched the car driven by Decedent, which belonged to Decedent's mother.

117.   The actions of the Defendant and/or its agents resulted in damages to the car driven by the Decedent. As an authorized user of the vehicle on the day in question, the Decedent was liable for the car and any damages to the car, making the Estate of Allen C. Lowe (Plaintiffs) now responsible for the damages.

118.   Defendant CSXT knowingly and willingly failed to return the keys to the car to the Plaintiffs or Decedent's family for days after the Decedent's death despite multiple requests.

119. Defendant CSXT knowingly and willingly denied the Plaintiffs and Decedent's family access to the car which was on their property for days after the Decedent's death.

120. Defendant, without any legal authority, knowingly and willingly failed to return the car to Plaintiffs and Decedent's family for days after the Decedent's death.

121. Defendant had no legal right or authority to break into and alter the electrical systems of the car driven by Decedent on the day of his death. The actions taken by Defendant resulted in damages to the car.

122. Defendant intentionally, without any legal right or authority to do so, deprived Plaintiffs and the Decedent's family access and control over the use and enjoyment of their property.

123. Plaintiffs have damages in an amount to be proven at trial as a result of Defendant's actions in breaking into and damaging the car driven by Decedent on the day of death and unlawfully depriving the Plaintiffs and Decedent's family access to the car.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demands a jury trial on all issues.

**WHEREFORE**, Plaintiffs pray for the following:

  a. Trial by jury;

b.  Judgment in Plaintiffs' favor and against Defendant CSX Transportation, Inc. in an amount to be shown by the evidence at the time of trial and determined by the enlightened conscious of the jury, including but not limited to any and all lost wages and fringe benefits and future wages and fringe benefits, loss of support and other financial benefits, including, but not limited to pecuniary benefits;

c.  Plaintiffs reserve the right to plead and/or pray for punitive damages as a cause of action and receive any and all punitive damages as determined and/or awarded by the Court and/or a Jury in accordance with the evidence;

d.  All costs of Court to be cast against Defendant CSXT; and

e.  Such other and further relief as this Court deems just and equitable.

Respectfully submitted this 22nd day of August, 2019.

**COOK, p.c.**

By:      /s/Edward S. Cook
         Edward S. Cook
         Georgia Bar No. 183741
         Lindsey A. Rodgers
         BPR 036177
         Admitted to Practice
         Eastern District of Tennessee
         William P. Leverett
         Georgia Bar No. 225593

25

Admitted to Practice
Eastern District of Tennessee

ATTORNEYS FOR THE PLAINTIFF

970 Peachtree Industrial Boulevard
Suite 202
Suwanee, GA 30024
Ph. 404.841.8485
Fx. 678.541.5408
ecook@cookpclaw.com
lrodgers@cookpclaw.com
bleverett@cookpclaw.com